UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TERRENCE M. O'REILLY,

                      Plaintiff,        No. 08-CV-6550 CJS

   -vs-

                                          DECISION AND ORDER

MARINA DODGE, INC.,

                      Defendant.

_____

APPEARANCES

For Plaintiff:            Christina A. Agola, Esq.
                          2100 First Federal Plaza
                          28 East Main Street
                          Rochester, New York 14614

For Defendant:         Edward G. Melvin, Esq.
                          Costello, Cooney & Fearon, PLLC
                          205 South Salina Street
                          Suite 400
                          Syracuse, New York 13202-1307

INTRODUCTION

This is an action in which Terrence O'Reilly ("Plaintiff") alleges that his former employer, Marina Dodge, Inc. ("Defendant"), discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. and the New York State Human Rights Law, Executive Law § 290 *et seq*, by terminating his employment. Now before the Court is Defendant's motion [#14] for summary judgment. For the reasons that follow, Defendant's application is granted and this action is dismissed.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most favorable to Plaintiff. At all relevant times Defendant operated an automobile dealership in Webster, New York. On or about March 13, 2000, Defendant hired Plaintiff as a Dispatcher/Service Advisor for the company's Service Department, and shortly thereafter changed his title to Service Advisor. In that capacity, Plaintiff was responsible for assisting customers needing service on their cars. Plaintiff's job included speaking with customers to determine the nature of their problems, writing up service tickets, and notifying customers when their vehicles were repaired.

Plaintiff was fifty-one years old when Defendant hired him. During the term of Plaintiff's employment, Defendant employed five people who were older than Plaintiff, including three men and one woman in their sixties, and one woman who was eighty-one years old. Additionally, Defendant employed three persons who, like Plaintiff, were in their fifties. Plaintiff maintains, however, that he was the oldest employee in the Service Department.

Plaintiff contends that he was an exceptional employee, and frequently earned bonuses based on his sales of repair and maintenance services to customers.[1] On the other hand, Defendant maintains that Plaintiff's job performance was adequate but not exceptional. For example, Plaintiff's immediate supervisor, Paul Lootens ("Lootens"), states that although Plaintiff "performed satisfactorily enough," he was disorganized and resisted Defendant's increased profitability initiatives. Specifically with regard to

---

[1]Plaintiff indicates that he was a good salesman and frequently earned bonuses under an incentive program that Defendant implemented in 2006. (Pl. Dep.at 37-40).

Plaintiff's disorganization, Lootens states that "at least every week Terry would lose track of a customer," and would also ask Lootens for help "to keep track of his work and customers." (Lootens Aff. ¶ 5). Lootens also indicates that Plaintiff frequently failed to notify customers when their cars were ready, and that he had difficulty keeping track of his service team's[2] work. *Id.* John Gabriele ("Gabriele"), Defendant's President, states that Plaintiff was disorganized and "only put in the minimal amount of time and effort required to complete his assigned tasks." (Gabriele Aff. ¶ 5). Additionally, Gabriele states that "at least two to three times a week" Plaintiff would commit errors, such as failing to write a service ticket or failing to call customers when their cars were ready. Gabriele further indicates that when Defendant adopted a new pre-paid maintenance program for customers, Plaintiff resisted implementing it:

> As a Service Advisor, it was Plaintiff's responsibility to sell the service to the customers. But Plaintiff was uncooperative from the beginning and unwilling to listen. . . . Defendant hired a trainer, Richard Crossley, to provide an in-service to the employees of the service shop regarding a program called 'Dealer Maintenance Plus.' Mr. Crossley reported that Plaintiff O'Reilly was not receptive to the training and displayed a poor attitude with respect to the initiative.

(Gabriele Aff. ¶ 8).[3] Plaintiff agrees that he received such training, but states that he never received "direct training" from Crossley, and had very little contact with him.[4]

---

[2]Plaintiff's service team consisted of himself and four repair technicians. *Id.*

[3]In support of Defendant's summary judgment motion, Crossley states, in an affidavit: "Mr. O'Reilly's attitude was negative throughout the training seminars. I spoke with John Gabriele about my observations and told him Mr. O'Reilly was not the type of person who should be dealing with the public because his negative attitude would certainly affect sales." (Crossley Aff. ¶ 6).

[4]Pl. Dep. at 41-42, 44-45.

On June 7, 2007, Defendant terminated Plaintiff's employment and re-hired Clark

Kaiser ("Kaiser"), a thirty-six year old who had previously worked for Defendant as a

Service Advisor.  Gabriele states that he terminated Plaintiff's employment because he

believed that Kaiser would be a better employee:

> [I]n Spring 2007, a former Service Advisor (Clark Kaiser) indicated he
> wanted to return to Marina Dodge.  Mr. Kaiser was popular with our
> customers.  The Service Department wanted to hire Mr. Kaiser back
> because he was a better option than Plaintiff O'Reilly; Mr. Kaiser would be
> more organized and help the Service Department reach its increased
> profitability expectations.  In light of Plaintiff's continued disorganization,
> mistakes and failure to cooperate with my efforts to increase profitability in
> the Service Department and his negative attitude toward these efforts, and
> because Mr. Kaiser became available, Marina Dodge terminated Plaintiff on
> June 7, 2007 and hired Mr. Kaiser as his replacement.

(Gabriele Aff.  ¶ 9).

On June 14, 2007, approximately one week after Defendant terminated Plaintiff's

employment, Lootens provided Plaintiff with a letter of recommendation, stating:

> To Whom it May Concern: I, Paul Lootens, Service Manager of Marina
> Dodge has [sic] been asked by Mr. Terry O'Reilly for a letter of
> recommendation.  Mr. O'Reilly during his employment beginning in 1999
> has performed with great excellent quality of customer satisfaction.  He
> takes pride in listening to customers['] concerns and getting the best
> solution for those concerns.  He is stern and respectful to his fellow
> employees, leaving no questions unanswered.

(Pl. Exhibits in Opposition to Summary Judgment, Vol. II).  Lootens explains that he did

so because Plaintiff "is a good guy," and because he did not believe that he could say

anything negative: "I was hoping my letter would help Terry find a new job, and I have

been told that you can't say anything negative in a reference letter." (Lootens Aff. at ¶ 2).

Subsequently, Plaintiff filed an age discrimination complaint with the U.S. Equal

Employment Opportunities Commission ("EEOC").  Plaintiff was represented in the

EEOC proceeding by his present attorney. In response to Plaintiff's complaint, Defendant filed affidavits with the EEOC from Crossley, Paul DeNeef ("DeNeef"), Defendant's Parts Manager, and Steven LaMagna ("LaMagna"), Defendant's Body Shop Manager. (Defendant's Exhibits 3-5). These affidavits indicated that Plaintiff was a lackadaisical employee with a bad attitude who resisted Defendant's efforts to increase sales. On September 17, 2008, the EEOC dismissed Plaintiff's complaint and issued a "Right to Sue Letter."

On December 4, 2008, Plaintiff commenced this action. Plaintiff's Complaint [#1] alleges that he was "subject to discriminatory and ageist comments." (Complaint ¶ 15). As illustration, the Complaint states:

> For example, Plaintiff's immediate supervisor would ask him if 'he [Plaintiff] remembered who he was'; that Plaintiff must have GPS [Global Positioning Satellite] in his vehicle because he 'manages' to find his way home 'every day.' Plaintiff was also frequently interrupted by defendant's owner, who would gesture as if he was drooling and say 'ahhh.'

(Complaint ¶ ¶ 16-17). The Complaint also alleges that Defendant had a "predisposition towards younger employees and discriminatory animus towards older employees." *Id*. ¶ 19.

On March 12, 2009, the Honorable Jonathan W. Feldman, United States Magistrate Judge, issued a Scheduling Order [#11] in this case, which directed, in pertinent part, that "[a]ll mandatory disclosure requirements found in Rule 26(a)(1) of the Federal Rules of Civil Procedure" be completed by April 13, 2009. Rule 26(a)(1)(A) states, in pertinent part, that a party "must, without awaiting a discovery request, provide . . . the name, and if know, the address and telephone number of each individual likely to have discoverable information – along with the subject of that information – that the

disclosing party may use to support its claims." Rule 26(e) states that "a party who has made a disclosure under Rule 26(a)" "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

On September 24, 2009, Defendant deposed Plaintiff. During the deposition, Plaintiff explained that there was good natured teasing that went on at the dealership, and there was also teasing that was offensive. (Pl. Dep. at 23-24). Defendant's counsel asked Plaintiff several times to describe any comments that had been made to him that were offensive. Plaintiff listed the following comments: 1) Co-workers and supervisors made fun of Plaintiff's admitted habit of saying "Ha?" or "Ah?" before answering a question[5]; 2) co-workers and supervisors asked Plaintiff if he remembered his own name, and if he remembered the names of customers and relatives, because Plaintiff once forgot the name of a customer; 3) co-workers and supervisors asked Plaintiff if he managed to find his way home and find his way to work;[6] 4) co-workers and supervisors commented on the fact that Plaintiff's life outside of work was extremely regimented, because they were jealous of his stable home life; and 5) co-workers nicknamed Plaintiff

---

[5]Plaintiff stated: "I had kind of a built in thing that I would say 'ha,' okay, which gave me time to reflect on exactly what you were talking about." (Pl. Dep. at 24).

[6]"My wife didn't cook. They knew that at six o'clock, didn't matter what day it was, you'd find me at East Ridge. On Wednesday nights I'd always go to Bingo, okay, and I was home. That was my life. Go to work, go home, eat at East Ridge and go to Bingo on Wednesday night. That was my life and they were jealous of that and boy, they said I must have everything keyed in my GPS because other than that I don't go anywhere else. I don't know how to find my way. That's when that all started." (Pl. Dep. at 27).

"Conehead" because of the shape of his bald head. (Pl. Dep. at 24-28,129-130).

During the deposition, despite Defendant's repeated questioning, Plaintiff did not allege any other type of offensive comments, and specifically, he did not allege any comments specifically concerning his age:

> Q. Any other comments that any of the employees would make to you that you felt, I think you said went beyond just regular teasing?
>
> A. Oh, yeah. The biggest thing was how did I ever find my way to work. How did I ever find my way back home.[7]
>
> ***
>
> Q. Terry, any other comments that you can remember as to teasing that you felt went beyond regular teasing?
>
> A. Basically that's it. I mean, that's it. I mean, everything built off from that. You know, one guy would say, you know, 'Terry couldn't find his way here to work today,' and then they would just elaborate on that and it would be a whole day thing, you know.[8]
>
> ***
>
> Q. And what comments, if any, would John Gabriele make in this regard?
>
> A. Ha? He'd be in front of me and said 'Terry find his way home yesterday and did he use his GPS to get there'; da, da, da, da . . . .[9][10]
>
> ***
>
> Q. There were two main ones [comments] that you talked about Terry. Finding your way home with the GPS and the habit of saying 'ha?'.
>
> A. Yes.
>
> Q. So, those are the two main ones. Are there any other ones that you can recall?

---

[7] *Id.* at 26.

[8]*Id.* at 27.

[9]*Id.* at 28

[10]Plaintiff indicated that Gabriele made this type of comment to him approximately ten times over seven years. (Pl. Dep. at 30).

A. I mentioned the nickname they kind of labeled me, 'cone head.'" [11]

(Pl. Deposition, see footnotes).

Also during the deposition, Plaintiff explained why he believes that he was

terminated because of his age:

Q. And then why do you think you were terminated?

A. Basically because of my age. There is no other reason why I should have been. John [Gabriele] is a five star dealership, okay. Some of the qualifications in order to be a five star dealership is that his employees must maintain certification, okay, as for the Sales Department, Parts Department, and that's true of the Service Department. I was John's only Service Advisor that was certified and I have been since day one of employment. Clark was not certified. . . . My work record, Paul Lootens gave me a letter of recommendation saying what a great job I have done.

***

Q. Any other reasons why you think you were terminated because of your age?

A. There is no other reason but my age. I had a stellar work record. I was always there at work regardless of the conditions. . . . There was the bottom line here, Clark. They said they are making a change. What other change could it have been. It wasn't performance because I submitted documentation of Clark against me, okay, prior to him leaving [the dealership before being re-hired].

(Pl. Dep. at 50-51). Plaintiff also explained why he believes that the offensive comments

discussed above, such as those concerning his speech habit and his failure to remember

a customer's name, were indicative of age discrimination:

Q. Now, the teasing examples that you provided . . . how are those comments indicative of any age discrimination? . . . Why would you state that those are ageist comments? Were they related to, have any relation to your age?

A. Because the underlying fact of all these comments, okay, was basically that I was much older than any of them, okay, and because of the way I

_____

[11]*Id.* at 129

was able to handle these criticisms day in and day out, okay. My personality, my maturity, okay, has reached a level where I can withstand these comments day in and day out and they know it, okay. It was the underlying fact because I reached maturity, where they had not reached maturity. And the only way you do that is through age, okay. That was the underlying fact, okay. It didn't have to be said every day were are going to say this to you because you're old, okay. It was a given, okay. I was, you know, anywheres from 10 to 15 years younger than anybody there.

Q. Or older, right, you were 10 to 15 years older than anybody there?

A. Yes.

\*\*\*

Q. [B]ack to my question regarding your age and the teasing that you received. . . . The one that you referenced as far as your teasing, you stated that you prefaced your comments often with saying "ha," right?

A. Uh hum. Yes.

Q. And you were teased about that, correct?

A. Yes.

Q. But that had nothing to do with your age, right?

A. Wrong. I mean, it was a given.

Q. Because you were 10 to 15 years older than the other employees?

A. That was correct.

Q. The teasing with respect to you having a GPS and finding your way home, you testified that it was related to the fact that you had a regular schedule and that the other employees were jealous of your stable schedule and home life, correct?

A. Right. Actually you go both ways, okay, because what you just said to me, okay, is the GPS, the "ha," okay, both of these are what they are not saying verbatim or per words but what they are implying is I have reached that level of dementia or Alzheimer's okay. When I go "ha," okay, I am now at that level where the brain isn't working this way. That's what they are implying. Okay, they are not coming out and saying it but that's what they are implying [.]

\*\*\*

Q. Okay. Now the other example that you provided is they ask you if you

remembered somebody's name and you said that started when you forgot a customer's name early on in your employment at Marina Dodge, right?

A. Uh hum, yes.

Q. And you think that is an ageist comment as well?

A. Ha?  Yes.  I mean, they grew into that, okay.  Because when I started at Marina Dodge, which was seven years prior to this, my exit, okay, I was still 10, 15 years older than any of them, okay.

(Pl. Dep. at 57-60).

Following the completion of discovery, Defendant filed the subject motion for summary judgment.  In support of the application, Defendant submitted affidavits from Gabriele and Lootens, describing Plaintiff's alleged disorganization and resistance to implementing Defendant's sales programs.  Additionally, Defendant submitted the same affidavits from Crossley, DeNeef, and LaMagna, that it previously submitted to the EEOC.  Defendant concedes that Plaintiff can establish a prima facie case.  However, Defendant contends that it has come forward with a legitimate, non-discriminatory reason for why it terminated Plaintiff's employment, and that Plaintiff cannot show that the proffered reason is false and that the real reason for the decision was age discrimination. Specifically, Defendant argues that the offensive comments which Plaintiff described at his deposition are not related to his age, and that Plaintiff's subjective belief to the contrary is not enough to create a triable issue of fact. Defendant further notes that it employed many individuals who were as old, or older, than Plaintiff at the relevant time. Lastly, Defendant indicates that the context in which it made the decision to terminate Plaintiff's employment negates an inference of discrimination.  Specifically, Defendant states that it had previously employed Kaiser, and simply felt that he  would be more

organized and more aggressive in pursuing sales.

Plaintiff opposes the motion, and maintains that he has shown both that Defendant's reason is false and that the real reason he was terminated is age discrimination. In that regard, Plaintiff relies on the facts set forth above and the documentary exhibits from which the information is taken, as well as two affidavits: one from himself, and one from a former co-worker, Christian Stevenson ("Stevenson"). Stevenson was the Service Manager at Marina Mitsubishi, a car dealership affiliated with Defendant and housed in an adjacent building. Stevenson's affidavit alleges numerous instances in which employees made negative comments about Plaintiff's age. For example, Stevenson indicates that employees "constantly referred to [Plaintiff] as 'old man,'" and made statements to Plaintiff such as "hurry up old man" and "pick up the pace old man." (Stevenson Aff. ¶ 8). Additionally, Stevenson states that in meetings, Gabriele frequently expressed a desire to hire "some good new young blood," and that in deciding to terminate Plaintiff's employment, Gabriele "used the terminology again that he wanted new, younger people to shake things up." (*Id*. at ¶ ¶ 15-16). Significantly, during discovery Plaintiff never identified Stevenson as someone having information about the case. Despite that fact, Plaintiff did not move to re-open discovery, nor did it supplement its disclosures under Rule 26(e), before submitting Stevenson's affidavit. Plaintiff's own affidavit, on the other hand, merely reiterates the facts and opinions to which he testified during his deposition. Curiously, Plaintiff's affidavit, like his deposition testimony, makes no mention of the "old man" comments alleged by Stevenson.

In reply, Defendant reiterates that Plaintiff cannot prove discriminatory animus. Additionally, Defendant maintains that the Court should strike Stevenson's affidavit,

pursuant to FRCP 37(c)(1).  On this point, Defendant states that when Plaintiff made his

required disclosures under Rule 26(a), and when he responded to Defendant's

interrogatories[12], he did not list Stevenson as a person with discoverable information.

Defendant further indicates that Plaintiff never indicated at his deposition that Stevenson

had discoverable information, and in fact, never testified at all concerning the incidents

which Stevenson now alleges.  Finally, Defendant states that Stevenson is biased,

because Defendant sued him, for stealing a customer list, in January 2010,

approximately three months before Stevenson provided his affidavit to Plaintiff.

On June 10, 2010, counsel for the parties appeared before the undersigned for

oral argument.  During argument, Plaintiff's counsel offered an explanation for why she

had failed to disclose Stevenson as required by Rules 26(a) & (e).[13]  Plaintiff's counsel

stated that after Plaintiff received Defendant's moving papers, including the affidavits

from Lootens, Lamagna, Deneef, and Crossley,  counsel was "basically suspicious" as to

why Defendant did not provide an affidavit from Stevenson, since Stevenson was "*the*

*manager* of Marina Dodge Mitsubishi.*" (emphasis added).  Counsel was suspicious, she

---

[12]Defendant's First Set of Interrogatories, Interrogatory No. 6, asked Plaintiff to identify each act
which allegedly violated the ADEA, and to list "the names of the persons who made the allegedly
discrimination [sic] and ageist comments."  In response, Plaintiff described alleged comments about
whether Plaintiff knew his own name and whether he used his GPS to get home, and about Plaintiff's habit
of saying "ha" or "ah."  The response did not mention any comment specifically referencing Plaintiff's age.

[13]The day before oral argument,  June 9, 2010, Plaintiff's counsel telephoned chambers and
asked whether the Court wished to have her submit papers in response to Defendant's request to strike
Stevenson's affidavit.  At that time, Plaintiff's counsel represented that the reason why Plaintiff had not
obtained an affidavit from Stevenson sooner was that, until Plaintiff received Defendant's summary
judgment motion, Plaintiff did not know the purported reason why Defendant had terminated Plaintiff's
employment, and that it was only upon learning such reason, as set forth in Defendant's summary
judgment papers, that Plaintiff decided to contact Stevenson.  At oral argument, Plaintiff's counsel
reiterated that explanation.  However, Defendant's counsel pointed out that Plaintiff's counsel also
represented Plaintiff in the action before the EEOC, and that Defendants had given the same explanation
in that proceeding for terminating Plaintiff's employment that it gave in this action.

said, because none of the other affiants was the manager of Marina Dodge Mitsubishi. ("Your Honor, all I'm simply referring to is that these three individuals [Lamagna, Deneef, and Crossley] that the defendant furnished statements on behalf of were not the manager of Marina Dodge Mitsubishi and that's when we subsequently reached out to Mr. Stevenson.").  Plaintiff's counsel stated that she contacted Stevenson because she believed that he, as the Manager of Marina Dodge Mitsubishi, "would have some kind of knowledge, personal knowledge and insight, as to the hiring and firing of their employees."  Plaintiff's counsel stated that at that time, she believed that Stevenson still worked for Marina Mitsubishi, but that nonetheless, she decided that because Stevenson had not submitted an affidavit in support of Defendant's motion, he might have information favorable to Plaintiff.  Curiously, Plaintiff's counsel admitted that she did not seek information from anyone else working in the Marina Dodge facility, but only Stevenson, who worked in the adjacent Marina Mitsubishi location.[14]

Plaintiff's counsel further explained that she did not previously seek discovery from Stevenson *because* she "presumed that Mr. Stevenson would be a witness for the defense."  Plaintiff's counsel did not depose Stevenson, and in fact, she did not depose anyone during discovery.   Plaintiff's counsel further suggested that there was no need to depose Stevenson, because she presumed that Defendant would provide a statement from Stevenson in support of its summary judgment motion.

---

[14]Plaintiff's counsel further suggested that it was reasonable to contact Stevenson, of all people, because Plaintiff had identified Stevenson as being part of Defendant's "hierarchical chain of command," on page 76 of his deposition.  However, while Stevenson's name is mentioned on page 76 of Plaintiff's deposition, in the context of a discussion of a financial document listing bonuses earned by various employees, the reference does not establish a "hierarchical chain of command" at Marina Dodge, and in fact identifies Stevenson as being "Manager of the *Mitsubishi* store." (Pl. Dep. at 76) (emphasis added).

ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996). Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-

moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)(citations and internal quotations omitted). However, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829.

The party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)(citations omitted). Rather, such affidavits are to be disregarded. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987)(citations omitted).

Additionally, a party may not ordinarily defeat a summary judgment motion using information that was not disclosed during discovery. On this point, Rule 37(c)(1) states, in pertinent part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is now allowed to use that information or witness to supply

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless."  A district court has discretion whether to exclude such evidence:

> In determining whether the district court acted within its discretion, [the
> Second Circuit] considers (1) the party's explanation for the failure to
> comply with the disclosure requirement; (2) the importance of the testimony
> of the precluded witness; (3) the prejudice suffered by the opposing party
> as a result of having to prepare to meet the new testimony; and (4) the
> possibility of a continuance.  The purpose of the rule is to prevent the
> practice of 'sandbagging' an opposing party with new evidence.  Although a
> 'bad-faith' violation of Rule 26 is not required in order to exclude evidence
> pursuant to Rule 37, it can be taken into account as part of the party's
> explanation for its failure to comply.

(referred to hereinafter as "the *Outley* factors") *Haas v. Delaware and Hudson Ry. Co.*,

No. 07-1198-cv, 282 Fed.Appx. 84, 86, 2008 WL 2566699 at *2 (2d Cir. Jun. 24, 2008)

(citations and internal quotation marks omitted).  "This analysis requires the district court

to consider the importance of the testimony to the case, the prejudice to the party

inconvenienced, and the administrative difficulty which the court itself would face." *Outley*

*v. City of New York*, 837 F.2d 587, 590 (2d Cir. 1988).  Moreover,

> [b]efore the extreme sanction of preclusion may be used by the district
> court, a judge should inquire more fully into the actual difficulties which the
> violation causes, and must consider less drastic responses. Considerations
> of fair play may dictate that courts eschew the harshest sanctions  where
> failure to comply is due to a mere oversight of counsel amounting to no
> more than simple negligence.

*Id.*, 837 F.2d at 591 (citation and internal quotation marks omitted).  On the other hand,

where a party fails to disclose information in response to discovery demands, fails to

explain such failure, and never asks to reopen discovery, a court does not abuse its

discretion in precluding the evidence. *Haas v. Delaware and Hudson Ry. Co.*, 282

Fed.Appx. at 86-87, 2008 WL 2566699 at *2-3.

At the outset, the Court finds that Stevenson's affidavit should be stricken, pursuant to FRCP 37(c)(1). Considering the factors discussed above, the Court finds, first and foremost, that Plaintiff has offered no plausible explanation for failing to disclose Stevenson as a witness. Much to the contrary, as the Court stated during oral argument, it finds Plaintiff's counsel's explanations patently implausible. For example, counsel's claim that she tracked down Stevenson because Defendant provided no affidavit from "the manager of Marina Dodge Mitsubishi" lacks credibility, since it is undisputed that Stevenson was never "the Manager" of Marina Dodge Mitsubishi. Instead, Stevenson was merely the Service Manager at Marina Mitsubishi, a separate dealership, which was associated with, but physically separate from, Marina Dodge. In that capacity, Stevenson held the same position at Marina Mitsubishi that Lootens held at Marina Dodge. Since Lootens provided an affidavit in support of summary judgment, there is no support for counsel's claim that she became suspicious because "no manager" had submitted an affidavit. Additionally, since Lootens was Plaintiff's supervisor and Stevenson wasn't, there would be nothing suspicious about the absence of an affidavit from Stevenson. Furthermore, since Stevenson was never Plaintiff's supervisor, there would be no reason for counsel to suspect that Stevenson was involved in the decision-making process which led to the termination of Plaintiff's employment.

Equally implausible is counsel's assertion that she did not seek discovery from Stevenson sooner because she assumed that he would be a defense witness. Using that logic, a party would never need to conduct discovery. And as mentioned earlier, Plaintiff did not depose *any witness* in this action. Additionally, Plaintiff did not request to reopen discovery or to supplement his discovery responses before submitting

Stevenson's affidavit.  Based upon all of these factors, the Court finds that Plaintiff has not provided a plausible explanation for the failure to disclose Stevenson, and the first *Outley* factor accordingly weighs in favor of striking Stevenson's affidavit.

The second *Outley* factor weighs in Plaintiff's favor, since Stevenson's affidavit would obviously be important to Plaintiff's case.  The third *Outley* factor weighs in favor of striking the affidavit, since Defendant would be prejudiced by allowing the affidavit.  In this regard, Defendant conducted discovery and filed a seemingly meritorious summary judgment motion, only to be confronted by a "smoking gun" affidavit procured by Plaintiff long after the close of discovery.  The Federal Rules of Civil Procedure are designed to prevent such sandbagging.  Not only that, but the affidavit alleges evidence of discrimination which even Plaintiff himself never alleged.[15]  Plaintiff offers no explanation for his failure to testify concerning the alleged "old man" comments during his deposition. To allow the affidavit would essentially condone a practice by plaintiffs of waiting until after a summary judgment motion is filed before conducting any discovery.  As for the fourth *Outley* factor, the Court finds that this factor favors Plaintiff, since a trial has not been scheduled and the Court could grant a continuance.

Weighing all of the *Outley* factors together, and having considered the possibility of imposing a lesser sanction, the Court finds that preclusion of Stevenson's affidavit is appropriate.  In reaching this decision, the Court relies most heavily on Plaintiff's failure to provide a good reason for failing to comply with Rule 26(a) & (e), and the need to

---

[15]Even assuming that Plaintiff could have somehow forgotten about the alleged "old man" comments during his deposition, he makes no mention of them in his affidavit submitted in opposition to summary judgment, and offers no explanation for his failure to disclose them, even though Stevenson contends that they were made "constantly" in Plaintiff's presence.

deter the conduct discussed above.

The Court will now proceed to consider Plaintiff's claim in light of the remaining record, viewed in the light most-favorable to him, with all reasonable inferences drawn in his favor.  Plaintiff's claim is pursuant to the ADEA, which prohibits discrimination on the basis of age. 29 U.S.C. § 623.[16]  To establish a prima facie case of discrimination under the ADEA, a plaintiff must show four things: (1) he is a member of the protected class; (2) he is qualified for his position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466-67 (2d Cir. 2001) (citations omitted), *cert den.* 534 U.S. 993 (2001).  Discrimination claims such as the instant one are analyzed using the three-tier burden-shifting test "set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Valentine v.Standard & Poors*, 50 F.Supp.2d 262, 281-82 (S.D.N.Y. 1999)(Citations and internal quotations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 466.  Under the first tier of the *McDonnell Douglas* test, the plaintiff must establish a prima facie case.[17]  If the plaintiff establishes a prima facie case,

> the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's discharge [or other adverse employment action].  At this stage, the employer need only articulate--but need not prove-- the existence of a nondiscriminatory reason for its

---

[16]Claims for age discrimination under the NYHRL "are subject to the same analysis as claims brought under the ADEA." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (citation omitted).

[17]It is clear that "the burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion as the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (emphasis in original, citation and internal quotation marks omitted).

decision. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Once defendant meets its burden of production, the burden shifts back to plaintiff. Under the third tier of the *McDonnell Douglas* test, plaintiff bears the ultimate burden of proving that the reason proffered by the employer is a pretext for unlawful discrimination. In order to survive a motion for summary judgment, plaintiff must establish a genuine issue of material fact as to whether the employer's reason . . . is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.

*Valentine*, 50 F.Supp.2d at 281-82 (Citations and internal quotations omitted); *see also,*

*Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

At the third tier of the *McDonnell Douglas* test, simply proving that the employer's

proffered reason was false may, or may not, establish the required proof of

discriminatory intent:

The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct. In other words, it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (*quoting Reeves v.*

*Sanderson Plumbing Prods. Inc.*, 120 S.Ct. 2097, 2108-09 (2000)). In this regard, "[t]he

relevant factors . . . include the strength of the plaintiff's prima facie case, the probative

value of the proof that the employer's explanation is false, and any other evidence that

supports or undermines the employer's case." *Id.* (internal quotation marks omitted).[18]

---

[18]*See also, id.* at 154: "The requirements of the *McDonnell Douglas* prima facie case are so minimal that they do not necessarily support any inference of discrimination; and there are so many reasons why employers give false reasons for an adverse employment action that evidence contradicting the employer's given reason-without more-does not necessarily give logical support to an inference of discrimination. We recognize[ ] that in some circumstances the prima facie case and/or evidence of falsity might give powerful evidence of discrimination-more than enough to sustain a plaintiff's verdict-but in

A stray comment is insufficient, without more, to create a triable issue of fact to defeat summary judgment. *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("[S]tray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination. . . . [S]uch comments, without more, cannot get a discrimination suit to a jury.") (citation omitted). Moreover, a Plaintiff's subjective belief that he was discriminated against is insufficient to create a triable issue of fact. *See, Jones v. Potter*, No. 01-CV-0546E(SC), 2004 WL 625276 at *5 (W.D.N.Y. Feb. 2, 2004) ("[P]laintiff's subjective belief and assertion that he was more qualified for the position of Associate Supervisor does little to support an inference that defendant's decision not to select him for an interview was due to his age or race.") (*citing Hines v. Hillside Children's Ctr.*, 73 F.Supp.2d 308, 320 (W.D.N.Y.1999)); *see also, Jugueta v. Perry*, No. 95 CIV. 10303 (DC), 1997 WL 742535 at *6 (S.D.N.Y. Dec. 1,1997) (""The interviewers' lack of eye contact with plaintiff during the interview is nothing more than 'metaphysical' speculation by the plaintiff. Without more, such speculation does not constitute evidence sufficient to defeat a summary judgment motion.") (citation omitted).

In this case, as mentioned earlier, Defendant concedes that Plaintiff has met the minimal burden of establishing a prima facie case. In that regard, Plaintiff was over forty years of age, he was qualified for his position, his employment was terminated, and he was replaced by someone not of the protected class. Next, Defendant has carried its burden of identifying a non-discriminatory reason for terminating Plaintiff's employment: It

---

others, the two together might fall far short of providing evidence from which a reasonable inference of discrimination could be drawn."

was familiar with both Plaintiff and Kaiser, and believed that Kaiser was a better employee. As to this determination, Defendant maintains that Plaintiff was disorganized and resistant to implementing Defendant's sales plan. Plaintiff responds that Defendant's reason is false, and that Defendant's true reason was age bias. In support of this contention, Plaintiff essentially relies on two pieces of evidence: 1) Lootens' letter of recommendation; and 2) evidence that Plaintiff earned sales bonuses. Significantly, Plaintiff never expressly denies Defendant's contention that he was disorganized. Instead, he relies on the Lootens letter of recommendation to show that he was a good employee. The Court will assume, for purposes of this motion, that Plaintiff has established a triable issue of fact as to whether Defendant's proffered reason is false.

As for demonstrating that Defendant was actually motivated by age bias, Plaintiff relies on the verbal comments discussed above, concerning his quirk of saying "ah," his ability to remember people's names, his ability to find his way to and from work, his stable home life, and his cone-shaped head. Plaintiff maintains that "it was a given" that such comments were age-related, since he was ten-to-fifteen years older that anyone else in the Service Department. Additionally, Plaintiff contends that the comments were meant to suggest that he had dementia or Alzheimer's disease. However, the Court finds that the offensive comments objectively are not indicative of an age-based discriminatory animus. Plaintiff's subjective feelings to the contrary are insufficient to create a triable issue of fact.

Nevertheless, as discussed above, simply proving that the employer's proffered reason was false may establish the required proof of discriminatory intent. In considering whether the falsity of Defendant's reason is enough to carry Plaintiff's burden, the Court

should consider factors including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case. In that regard, the Court finds that Plaintiff's prima facie case is neither weak nor strong, but probably somewhere in the middle. On this point, the Second Circuit has indicated that meeting the "minimal" prima facie case "requires no evidence of discrimination." *James v. New York Racing Ass'n*, 233 F.3d at 153-154.[19] On the other hand, the proof that Defendant's proffered reason is false is not particularly strong. On that point, as noted earlier Plaintiff does not expressly deny that he was a disorganized employee who routinely lost track of customers, as Defendant claims. Nor does Lootens' letter of recommendation necessarily undermine Defendants' proffered reason, considering the circumstances under which Lootens drafted the letter. Moreover, although Plaintiff has shown that he earned bonuses, this fact does not necessarily refute Defendant's contention that Plaintiff was below the company's expectations for sales and attitude. Furthermore, whether or not Crossley's negative impression of Plaintiff was justified, it is undisputed that Crossley, whom Gabriele had hired to train the sales staff, advised Gabriele that Plaintiff "was not the type of person who should be dealing with the public because his negative attitude would certainly affect sales." *See*, Footnote 3 above (quoting Crossley Aff. ¶ 6). Additionally, the Court considers the fact that Defendant hired Plaintiff when he was fifty-one years old, which, together with the evidence that Defendant employed a

---

[19] *Id*. ("[A] plaintiff can avoid dismissal by presenting the 'minimal' prima facie case defined by the Supreme Court in *McDonnell Douglas*. This requires no evidence of discrimination. It is satisfied by a showing of membership in a protected class, qualification for the position, an adverse employment action, and preference for a person not of the protected class.") (citation and internal quotation marks omitted).

number of people older than Plaintiff, tends to negate an inference that Defendant was motivated by age-based discriminatory animus.

Considering all of the factors, the Court finds that Plaintiff's evidence is "insufficient to permit a reasonable trier of fact to find that age discrimination was the reason for his discharge" from Marina Dodge. *James v. New York Racing Ass'n*, 233 F.3d at 157. Consequently, Plaintiff has not carried his burden at the third step of the *McDonnell Douglas* analysis.

CONCLUSION

For all the foregoing reasons, Defendant's summary judgment motion [#14] is granted, and this action is dismissed.

So Ordered.

Dated: Rochester, New York
     June 22, 2010

                                   ENTER:


                                   /s/ Charles J. Siragusa
                                   CHARLES J. SIRAGUSA
                                   United States District Judge